IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANEN L. DAHLENBURG,
SHANEN L. BROWN                                    Case No. 6:15-CL-01003-CL

        Plaintiff,                                 OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

        Defendant.

_____

MARK D. CLARKE, Magistrate Judge:

      Plaintiff SHANEN L. DAHLENBURG ("Plaintiff") seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Because the Commissioner's decision is based on proper

1 – OPINION AND ORDER

legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED and this matter is dismissed.

## BACKGROUND

Plaintiff was born in April, 1972. Tr. 150. She completed eighth grade and attended special education classes throughout her schooling. Tr. 37. Plaintiff has worked as a medical transport driver. *Id.*

Plaintiff protectively filed an application for DIB and SSI on September 26, 2011, alleging disability beginning August 19, 2009, due to "bi-polar, learning disabilities, asthma, arthritis." Tr. 57. The Commissioner denied her application initially and upon reconsideration. Tr. 81-97. At Plaintiffs request, a hearing was held before an Administrative Law Judge ("ALJ") on September 18, 2013. Tr. 30-56. On November 7, 2013, the ALJ found Plaintiff not disabled. Tr. 11-25. The Appeals Council denied Plaintiffs request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r,* 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ found Plaintiff had the following severe impairments: right knee degenerative joint disease; panic disorder with agoraphobia; social phobia; posttraumatic stress disorder, in remission; bipolar disorder; dysthymia; somatization disorder; delusional disorder; attention deficit/hyperactivity disorder (ADHD); and major depressive disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 18.

The ALJ determined that Plaintiff had the RFC to perform light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking about six hours of an eight-hour workday, and sitting about six hours of an eight-hour workday. Tr. 20. Further, Plaintiff should be allowed to alternate sitting or standing positions as needed throughout the day

while remaining on task. She can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. *Id.* Plaintiff can frequently balance and stoop, but should only occasionally kneel, crouch and crawl. *Id.* She should avoid concentrated exposure to hazardous machinery and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. *Id.* Plaintiff is limited to occupations that do not require complex written or verbal communication. *Id.* Instructions should primarily be demonstrated. *Id.* She can understand and carry out simple instructions and can have occasional, brief, superficial contact with the public or coworkers. *Id.* In reaching her conclusion, the ALJ considered Plaintiffs testimony, but found her not fully credible. Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 23. Considering Plaintiffs age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant ·numbers in the national economy, including order filer, mail clerk, and information router. Tr. 25. Therefore, the ALJ concluded Plaintiff had not been disabled, as defined by the Social Security Act, since August 19, 2009. *Id.*

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

5 – OPINION AND ORDER

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to give proper weight to Dr. Taubenfeld's assessment; (2) failing to include fibromyalgia as a severe impairment; and (3) failing to give clear and convincing reasons for rejecting Plaintiff's testimony. Pl.'s Br. 5.

### I.    The ALJ Gave Proper Weight to Dr. Taubenfeld's Assessment

Plaintiff argues the ALJ failed to give proper weight to Dr. Taubenfeld's assessment. The ALJ rejected Dr. Taubenfeld's assessment because of (1) Plaintiff's work in 2012; (2) Plaintiff's limited and pain-focused treatment record; and (3) Plaintiff's daily activities. Because Dr. Taubenfeld's assessment is inconsistent with State agency opinions, Tr. 329, 66-67, 95-96, the ALJ is required to provide specific, legitimate reasons supported by substantial evidence in the record before rejecting Dr. Taubenfeld's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006). An inconsistency with other evidence in the record is a valid reason to discount a

medical opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). The ALJ properly rejected Dr. Taubenfeld's opinion.

### a. 2012 Work

Plaintiff's work at First Medical Transport LLC in early 2012 contradicts Dr. Taubenfeld's assessment. Dr. Taubenfeld opined Plaintiff's disability commenced on January 1, 2012. Tr. 329. However, Plaintiff worked with no accommodations or work restrictions during the first quarter of 2012. Tr. 325-27. Further, Plaintiff did not stop working because of her impairment and the ALJ was not required to credit Plaintiff's report that she was going to quit.[1] *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). This inconsistency between Dr. Taubenfeld's assessment and the evidence of Plaintiff's 2012 work is a legitimate reason to discount Dr. Taubenfeld's opinion.

### b. Limited Record

Dr. Taubenfeld's assessment of marked limitations in concentration and social functioning is not consistent with Plaintiff's limited treatment record where she was largely focused on pain. Plaintiff contends that her treatment record was limited due to lack of funds and anxiety. Plaintiff also argues that her primary focus was on pain because she was meeting with doctors who were not mental health specialists. The ALJ found that Plaintiff's treatment record as a whole showed a better picture of Plaintiff's mental health than the snapshot given by Dr. Taubenfeld's consultative examination. Tr. 23. The ALJ is required to consider the extent to which a medical opinion is consistent with the treatment record and is entitled to draw reasonable inferences from the evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); SSR 82-62, 1982 WL 31386, at *4.

---

[1] Plaintiff testified she was unable to handle her job at First Medical Transport, but the day she went in to give notice, the company closed. Tr. 39.

7 – OPINION AND ORDER

As for her limited treatment record being so limited, Plaintiff testified that "she only recently sought treatment because she could not make herself go into the building." Tr. 20, 42. The ALJ found that Plaintiff's failure to seek treatment was reasonably explained by Plaintiff having mild symptoms. The ALJ properly considered the information in the record and reasonably drew inferences from the evidence.

Plaintiff also mentions in her brief that lack of funds played a role in her not seeking treatment. However, Plaintiff testified that she only recently sought mental health treatment because she was unable to go into the building. Tr. 42. No mention of financial hardship was ever made. Again, in light of the record, the ALJ reasonably concluded that Plaintiff's lack of treatment stemmed from mild symptoms more than a lack of funding. Separately, it is reasonable Plaintiff focused on pain while meeting with doctors who were not mental health specialists, but the mental health treatment record remains extremely limited and does not support Dr. Taubenfeld's findings. For example, Dr. Taubenfeld assessed marked limitations in six categories concerning Plaintiff's concentration and social functioning. When State agency examiners reviewed the entirety of Plaintiff's treatment record, they assessed only moderate or not significant limitations in the same six categories.

Dr. Taubenfeld's primary support for his assessment is Plaintiff's Global Assessment of Functioning score. However, the ALJ found that these one-time assessments are largely reflective of a claimant's self-reporting rather than observations over time. The ALJ properly considered the extent to which Dr. Taubenfeld's opinion was consistent with the treatment record as a whole and gave specific and legitimate reasons for rejecting his opinion.

    c. *Daily Activities*

8 – OPINION AND ORDER

Dr. Taubenfeld's assessment is also contradicted by evidence in the record. Plaintiff argues that the marked limitations in concentration and social functioning assessed by Dr. Taubenfeld were corroborated by Ms. Stater's third party function report and are uncontradicted by Plaintiff's daily activities. The ALJ found that Plaintiff's daily activities were inconsistent with both Ms. Stater's observations and Dr. Taubenfeld's assessment. The ALJ may discount a medical opinion if it is inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *Rollins*, 261 F.3d at 856-57.

Ms. Sater reported that there were days when Plaintiff wouldn't leave her room. However, the ALJ found that this may have been a product of a lack of structure because there is no evidence in the record that Plaintiff had trouble leaving her room on days that she needed to go to work at her 2012 job. Plaintiff also self-reported that every day she cooks for her daughter, does house and yard work, goes outside, and is social for at least six hours. This, along with Plaintiff's 2012 job, is inconsistent with Dr. Taubenfeld's assessment that Plaintiff was "markedly" limited in sustaining an ordinary routine without special supervision.

Dr. Taubenfeld also assessed marked limitation in Plaintiff's ability to complete a normal workday without unreasonable rest periods. However, Plaintiff reported that her need to lie down could be spread out throughout the day and that she could be active for five hours at a time. This is adequate stamina to sustain work between normal breaks. Ms. Sater's report and Dr. Taubenfeld's assessment are inconsistent with Plaintiff's daily activities. Therefore, the ALJ was justified in discounting Dr. Taubenfeld's opinion.

The ALJ provided specific and legitimate reasons for giving Dr. Taubenfeld's opinion little weight. Even so, the ALJ did not fully reject Dr. Taubenfeld's opinion. In addition to the occupational limitations proposed by the State, the ALJ added further limitations based on Dr.

9 – OPINION AND ORDER

Taubenfeld's opinion. Tr. 23. There is no error in the weight the ALJ gave to Dr. Taubenfeld's opinion.

## II. Fibromyalgia

Plaintiff contends the ALJ erred by omitting fibromyalgia from the list of severe impairments. However, the ALJ found that the medical records did not adequately establish fibromyalgia as a medically determinable impairment. Tr. 17.

Fibromyalgia is a disorder defined by the American College of Rheumatology (ACR) and is recognized as medically-determinable if there are signs that are clinically established by a medical record. Under Social Security Ruling 12-2p, there are two sets of criteria promulgated by the ACR that the ALJ may use to find a person has a medically determinable impairment of fibromyalgia. First, the 1990 ACR criteria requires (1) a history of widespread pain in all four quadrants of the body for a minimum duration of three months (2) accompanied by at least 11 of 18 specific tender points, and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Gibson v. Comm'r*, No. 3:14-cv-01217-MA, 2015 U.S. Dist. LEXIS 108487, at *20 (D. Or. Aug. 18, 2015) (same). Second, the 2010 ACR preliminary diagnosis criteria require (1) a history of widespread pain as previously described, (2) with six or more fibromyalgia symptoms, signs or co-occurring conditions, and (3) evidence that other disorders that could cause the symptoms have been excluded. The ACR also requires that the diagnosis and examination stem from one physician. *See Hegar v. Colvin*, No. 6:14-CV-00455-PK, 2015 U.S. Dist. LEXIS 84686, at *19 (D. Or. June 1, 2015).

It appears that on establishing care with Dr. Weisensee, Plaintiff's self-report of fibromyalgia was accepted. Plaintiff's medical records note a family history of fibromyalgia, but the records from 2010 do not reflect a diagnosis of fibromyalgia. Tr. 265. Plaintiff did not

10 – OPINION AND ORDER

identify fibromyalgia as a condition limiting her ability to work in her initial disability report from October 2011. Tr. 178. As of the next report, made about eight months later, Plaintiff claimed that "fibromyalgia has worsened in the last few months." Tr. 219. On establishing care with Dr. Weisensee in March 2012, Plaintiff reported that she "carries a diagnosis of fibromyalgia currently not treated." Tr. 359-362. Dr. Weisensee continued to list fibromyalgia and states that Plaintiff had "Multiple tender spots consistent" with the condition, but Dr. Weisensee never formally diagnosed Plaintiff under the 1990 or 2010 ACR criteria. Tr. 379-401.

Based on the 1990 ACR criteria, Plaintiff was not properly diagnosed because no physician identified at least 11 positive tender points on physical examination. Similarly, based on the 2010 ACR criteria, Plaintiff was not properly diagnosed because no single physician documented manifestations of at least six fibromyalgia signs, symptoms, or co-occurring conditions. The ALJ reasonably found that there is no work up of fibromyalgia in the record.

Despite justifiably finding no fibromyalgia, the ALJ still considered all Plaintiff's alleged fibromyalgia symptoms when assessing her RFC. The ALJ considered depression, panic disorder with agoraphobia, and somatization disorder to be severe impairments. Tr. 16. The ALJ credited the opinions of Joshua J. Boyd, Psy.D., and Kordell N. Kennemer, Psy.D., who considered Plaintiff's memory problems and anxiety. Tr. 23, citing Tr. 62-63, 66-67, 90-91, 94-96. Finally, the ALJ considered Plaintiff's alleged fatigue, which Plaintiff specifically attributed to her fibromyalgia. Tr. 21, 47. Thus, even if the ALJ had erred, the error would have been harmless because the ALJ considered all of Plaintiff's alleged limitations and reasonably accommodated those that were credible.

### III. Plaintiff's Testimony

11 – OPINION AND ORDER

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony that she needs to lie down for 45-minutes twice during a normal workday. The ALJ properly rejected Plaintiff's testimony because her subjective complaints were (1) inconsistent with her daily activities and (2) undermined by her work in 2012. Additionally, she failed to seek treatment until shortly before the hearing.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chafer,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. General findings (e.g., "record in general indicates improvement") are an insufficient basis to support an adverse credibility determination. *Id.* at 722. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Examples of clear and convincing reasons for rejecting Plaintiff's testimony include inconsistencies between her testimony and her conduct; daily activities inconsistent with the alleged symptoms; inadequately explained failure to seek treatment; severity and effect of the symptoms complained of; and the ability to work after allegedly becoming disabled. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997); *Bray v. Comm'r,* 554 F.3d 1219, 1227 (9th Cir. 2009); *Orn v. Astrue,* 495 F.3d 625, 636 (9th Cir. 2007). Further,

Plaintiff should not be penalized for attempting to a lead normal life in the face of her limitations. *Reddick*, 157 F.3d at 722.

    a. *Subjective Complaints*

The ALJ found that Plaintiff's subjective complaints were (1) inconsistent with her daily activities and (2) undermined by her work in 2012. These are valid considerations supported by substantial evidence.

First, Plaintiff's ability to do some housework or spend time with her friend is not necessarily inconsistent with her claim of disability. However, Plaintiff reported that it is "hard for [her] to do anything," Tr. 21, 42, and that she can only spend six hours with others. The ALJ found these subjective complaints to be inconsistent with a variety of activities Plaintiff claims she does every day, including spending 6-8 hours with Ms. Sater while they help each other with household chores and engage in hobbies together. These activities are inconsistent with Plaintiff's testimony and the alleged severity of her symptoms.

Second, Plaintiff's 2012 work undermines her subjective complaints because she worked after she allegedly became disabled, she failed to report it to the Agency, and she stopped working for reasons other than disability. Tr. 21. The ability to work after allegedly becoming disabled weighs against Plaintiff's credibility.

    b. *Failure to Seek Treatment*

The ALJ found seeking mental health treatment only 27 days before the hearing "and after the hearing notice was issued is suspicious for an attempt to generate a medical record." Tr. 22, 369. Plaintiff contends that her treatment record was limited due to lack of funds and anxiety preventing care. Plaintiff also argues that her primary focus was on pain because she was meeting with doctors who were not mental health specialists. The ALJ may consider

13 – OPINION AND ORDER

inadequately explained failure to seek treatment in weighing Plaintiff's credibility. *Orn*, 495 F.3d at 636. As previously discussed, the ALJ reasonably concluded that Plaintiff's lack of treatment stemmed from mild symptoms more than anxiety or a lack of funding. Plaintiff did not adequately explain why she failed to seek treatment until shortly before the hearing. The ALJ relied on substantial evidence and provided clear and convincing reasons for discounting Plaintiff's opinion.

Despite the negative credibility finding, the ALJ accounted for Plaintiff's claim that she needs to lie down at intervals. Plaintiff reported that her need to lie down could be spread out throughout the day. Tr. 47. She also reported that she could be active for five hours at a time. Tr. 22. An eight-hour workday consists of "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p, 1996 WL 374185, at *6. Thus, the ALJ could reasonably conclude that Plaintiff had sufficient stamina to sustain work between normal breaks. The ALJ was not required to credit Plaintiff's testimony that she needs to lie down for 45 minutes two times during a normal work day for the reasons previously provided.

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this ___ day of August 2016.

MARK D. CLARKE
United States Magistrate Judge